IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Criminal Action No. |
| v. ) | 09-00044-02-CR-W-ODS |
| ) | |
| GORDON F. REABE, JR., ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION TO AMEND
## DEFENDANT'S CONDITIONS OF RELEASE

Before the court is the Government's Motion for Review and Appeal of a Release or Detention Order Pursuant to Title 18 U.S.C. § 3145(a). The Government moves the Court to revoke Defendant's bond and detain Defendant without bail pending trial. For the following reasons, the Government's motion should be denied.

### *I. BACKGROUND*

On January 21, 2009, a Criminal Complaint was filed charging Defendant with one count of aiding and abetting wire fraud in violation of 18 U.S.C. §§ 1343 and 2. An arrest warrant was also issued for Defendant that same day. On January 22, 2009, Defendant was arrested in the Central District of Utah. On January 26, 2009, United States Magistrate Judge Paul M. Warner released Defendant bond subject to conditions of release. Defendant appeared in the Western District of Missouri on January 29, 2009, for an initial appearance and preliminary examination. During the hearing, the Government orally moved the Court for review and appeal of the Defendant's release order pursuant to 18 U.S.C. § 3145(a); a written motion was filed on January 30, 2009 (Doc. No. 23).

1

Defendant filed suggestions in opposition to the Government's motion on February 3, 2009 (Doc. No. 25).

I conducted an evidentiary hearing on February 4, 2009. The government appeared by Assistant United States Attorneys Matt Whitworth and Kate Mahoney. Defendant was present, represented by retained counsel Brian Gaddy. The parties stipulated that the Court consider the information in the Pretrial Services Report of Central District of Utah Pretrial Services Officer Meriska Holt as the testimony she would give, under oath, if called as a witness. The parties also stipulated that Kansas City, Missouri Police Department Detective Catherine Johnson would testify in accordance with her affidavit in support of the criminal complaint (Tr. at 12-13). The Government called Detective Johnson to testify. Defendant offered the following exhibits into evidence:

> Defendant's Exhibit 1: Conditions of Release from the Central District of Utah;
> Defendant's Exhibit 2: Character letters from Rachel Reabe Nystrom, Gordon and Ruth Reabe, and Linda Reabe.

Defense counsel also made a proffer that, were Defendant to testify, he would state he is a lifelong resident of the greater Kansas City and/or the Lawrence, Kansas area (Tr. at 26-27). Defendant would further testify that he: graduated from Shawnee Mission East in 1975; obtained a Bachelor's of Science degree in Accounting and Business Administration from the University of Kansas in 1979; worked as an accountant in Kansas City at Price Waterhouse from 1979-1982; worked in his father's insurance business, Nelson, Reaby & Snyder, from 1982-2000; is currently involved in a car dealership in Kearney, Missouri; has been married to his wife, Linda, since 1982; has four children, Katelyn, age 24, Shannon, age 22, Eric, age 17, and Spencer, age 11; does not have a history of substance abuse or physical or mental health issues; currently owns a home in Lee's Summit,

Missouri; and previously owned a home in Lake Lotawana for seventeen years (Tr. at 27-29). Defendant's two oldest children live independently, while the youngest two still live in the family home (Tr. at 29). Defendant's youngest child has Down's Syndrome and is a special needs child (Tr. at 29).

## II. EVIDENCE

On the basis of the information contained in the Pretrial Services Report and the evidence adduced at the hearing, I find that:

1. Defendant, 51, was born in Kansas City, Missouri. He has lived in the community for the past twenty years and, specifically, in Lee's Summit, Missouri, for the past two and a half years.

2. Defendant has been married for twenty-six years and has four children. His two oldest children are adults and reside in Minneapolis, Minnesota. His two youngest children are minors and live with Defendant and his wife.

3. Defendant has a college degree and is currently self-employed. He stated he receives residual income from previously-sold insurance policies, which averages $2,000 a month. Defendant also stated he is an inventor and recently developed a casino game called "World Cup of Blackjack." He hopes to sell this game to casinos in the near future. Defendant also owns a car dealership called "N&R Auto Sales."

4. In addition to his monthly residual income, Defendant reported he had approximately $25,000 in a personal checking/savings account. Defendant owns his home outright and estimated it to be valued at $500,000. He also has personal automobiles that have a combined value of $12,000.

3

5. Defendant stated he is in good physical and mental health. He reported consuming alcohol once a week, but stated he has never used illicit or controlled substances of any kind.

6. Defendant does not have a previous criminal history.

7. Defendant is a frequent gambler at Harrah's Casino (Tr. at 14). He is a seven-tier player, which means that he gambles a lot of money and takes a lot of risk (Tr. at 14). He is at Harrah's Casino on almost a daily basis and also frequently travels to Las Vegas, Nevada to gamble (Tr. at 14-15).

8. The instant alleged offense involves a scheme to obtain money from Mercedes Benz of Kansas City, the Soave Group, TEN Investments, and Soave Enterprises, LLC, by means of fraudulent pretenses and representations (Doc. No. 1-2). As part of the scheme, Defendant, co-defendant Julie Bernet, and Lindsay Crawford are alleged to have planned and executed a physical and sexual assault in attempt to increase the settlement value of co-defendant Bernet and Ms. Crawford's civil lawsuit against such entities (Tr. at 17-18; Doc. No. 1-2).

9. Co-defendant Bernet and Ms. Crawford solicited Defendant for assistance with the assault (Tr. at 18; Doc. No. 1-2 ). Co-defendant Bernet and Ms. Crawford both engaged in discussions with Defendant regarding planning the assault (Tr. at 18, 23; Doc. No. 1-2).

10. Ms. Crawford suggested Defendant physically assault her with a beer bottle (Tr. at 22). She specifically indicated she did not want to be hit on the head with a metal object because of a previous head injury (Tr. at 23). Ms. Crawford also agreed to be sexually assaulted by Defendant with the condition that she be unconscious and that he wear a condom; she did not agree that Defendant could sexually assault her with a beer bottle, metal object, or thorny stem of a rose (Tr. at 22; Doc. No. 1-2).

11.     Co-defendant Bernet and Ms. Crawford took Defendant to Ms. Crawford's garage, the location where the assault was to occur in order to review logistics (Tr. at 19; Doc. No. 1-2).

12.     Co-defendant Bernet was instrumental in designing and planning the assault (Tr. at 20).

13.     Prior to the assault, Ms. Crawford changed into a skirt to facilitate the sexual assault (Tr. at 20, 24; Doc. No. 1-2). She and co-defendant Bernet also placed beer bottles in Ms. Crawford's garage (Tr. at 19-20).

14.     Ms. Crawford began having reservations about the plan (Doc. No. 1-2). Defendant duct taped her mouth and hands (Doc. No. 1-2). Immediately before the assault occurred, she told Defendant and co-defendant Bernet, "No." (Doc. No. 1-2). Co-defendant Bernet told Ms. Crawford, "It's gonna be over soon. You're fine and you know, you won't even remember it." (Doc. No. 1-2). Defendant told Ms. Crawford she needed to be facing the car door and co-defendant Bernet stated, "We're not even going to do it. It's okay, don't worry about it. Just turn around for a minute." (Doc. No. 1-2).

15.     Defendant then hit Ms. Crawford on the head with a metal object, despite their agreement otherwise (Tr. at 23). Ms. Crawford did not loose consciousness so Defendant struck her again causing her to fall to the floor (Doc. No. 1-2).

16.     Ms. Crawford remained conscious, but was unable to communicate because of the duct tape covering her mouth (Doc. No. 1-2). Co-defendant Bernet directed Defendant during the physical assault, and Defendant followed her directions (Tr. at 20; Doc. No. 1-2). Defendant stated that because Ms. Crawford moved around in an effort to stop the assault, they should duct tape her legs (Doc. No. 1-2). After Ms. Crawford's legs were bound, co-defendant Bernet told Defendant,

"Let's hit her in the leg. Let's hit her on the ribs. Let's hit her on the back." (Doc. No. 1-2). After a period of time co-defendant Bernet told Defendant, "Stop. Stop. That's enough." (Doc. No. 1-2).

17.     Defendant then placed duct tape on co-defendant Bernet's mouth and also bound her hands behind her back using the tape (Doc. No. 1-2). He hit her over the head with a beer bottle causing her to fall to the ground and lose consciousness (Doc. No. 1-2).

18.     Next, Defendant sexually assaulted Ms. Crawford using both ends of a beer bottle, an unidentified metal object, and the thorny stem of a rose (Tr. at 17; Doc. No. 1-2).

19.     When Defendant was finished assaulting Ms. Crawford, he asked co-defendant Bernet if she would be able to get out of the garage, to which she replied "I hope so. I mean I think so." Defendant then started Ms. Crawford's car, leaving Ms. Crawford and co-defendant bound with duct tape in the closed garage (Doc. No. 1-2).

20.     As a result of the physical and sexual assaults, Ms. Crawford suffered internal injuries in her vaginal area (Tr. at 15). She sustained bruising all over her body, including on her arms, legs and head (Tr. at 16). Ms. Crawford also had lacerations and what appeared to be abrasions internally, vaginally, as well as a scratch that ran from her vagina down her thigh (Tr. at 16). She is still receiving treatment for these injuries (Tr. at 16-17).

### *III. DISCUSSION*

The facts of this case are very disturbing. Although it appears that the alleged victims were involved in formulating the scheme and may have consented to an assault, the actual assault went far beyond what Ms. Crawford agreed could be done to her. Specifically, Ms. Crawford, Defendant and co-defendant Bernet agreed that Ms. Crawford would not be hit over the head with a metal object; yet, Defendant hit Ms. Crawford in the head twice with a metal object. He then duct

6

taped Ms. Crawford's legs to prevent her from resisting and hit her repeatedly. Ms. Crawford agreed Defendant could sexually assault her if she were unconscious and Defendant wore a condom; yet, Defendant sexually assaulted Ms. Crawford while she was conscious with a beer bottle, metal object, and rose stem. After beating co-defendant Bernet, Defendant started Ms. Crawford's car and left the two bound women in a closed garage that was filling with carbon monoxide; Ms. Crawford and co-defendant Bernet could have easily died. Mitigating against these facts is Defendant's lack of previous criminal history.

In addition to the increased level of the assault, I am also concerned with Defendant's addictive personality as evidenced by his daily gambling both in Kansas City and elsewhere. As suggested by defense counsel, however, there are conditions or a combination of conditions that would address this concern.[1] Accordingly, it is

RECOMMENDED that the Court amend the conditions set by Judge Warner in the Central District of Utah to reflect additional conditions. I recommend that the Court order Defendant be released on a $250,000 bond signed by Defendant and his wife, with $25,000 being deposited in the registry of the Court. The purpose of the deposit is not only to secure the bond and guarantee Defendant appears in court, but also to assure that Defendant follows all conditions of release. If Defendant is found to have violated any condition of his release, after a hearing, the $25,000 should immediately become subject to forfeiture. It is further

RECOMMENDED that the Court amend Defendant's bond to also contain: (1) the standard

---

[1] Defense counsel offered the following suggestions: ordering Defendant "not enter any places where gambling occurs or participate in any gambling activities" (Tr. at 34, 37); requiring Defendant to undergo counseling for gambling (Tr. at 37); and placing Defendant on "home monitoring where his movements are strictly monitored by Pretrial Services" (Tr. at 36, 37).

conditions of release set in all criminal cases in the Western District of Missouri; (2) electronic monitoring with a GPS device; (3) a curfew between 9:00 p.m. and 5:00 a.m., seven days a week; (4) counseling for gambling; (5) a restriction on all types of gambling; (6) a prohibition against entering any casinos; (7) a restriction of travel to the six-county metropolitan area; (8) a prohibition against weapons possession or use; and (9) a prohibition against contact with the alleged victims or witnesses in this case, including Ms. Crawford and co-defendant Bernet.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has ten days from the date of this report and recommendation to file and serve specific objections to the same, unless an extension of time for good cause is obtained. Failure to file and serve timely specific objections may result in waiver of the right to appeal factual findings made in the report and recommendation which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

*/s/ Robert E. Larsen*
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
January 9, 2009